**JMP SECURITIES LLP, Plaintiff,**

v.

**ALTAIR NANOTECHNOLOGIES INC., Defendant.**

Case No. 11–4498 SC.

United States District Court, N.D. California.

July 23, 2012.

Philip T. Besirof, Jordan Eth, Seth Schreiberg, Morrison & Foerster LLP, San Francisco, CA, for Plaintiff.

J. Daniel Sharp, Steven Edward Wilson, Crowell & Moring LLP, San Francisco, CA, David C. Reymann, Jeffrey J. Hunt, Parr Brown Gee and Loveless, PC, Salt Lake City, UT, for Defendant.

*ORDER GRANTING DEFENDANT'S SECOND MOTION FOR JUDGMENT ON THE PLEADINGS*

SAMUEL CONTI, District Judge.

## I. INTRODUCTION

Now before the Court is the Second Motion for Judgment on the Pleadings brought by Defendant Altair Nanotechnologies Inc. ("Altair") against Plaintiff JMP Securities LLP ("JMP"). ECF Nos. 37 ("2d MJP"), 42 ("2d Opp'n"), 45 ("2d Reply"). The parties' moving papers supply a choice-of-law analysis that they omitted when briefing Altair's First Motion for Judgment on the Pleadings. ECF Nos. 21 ("1st MJP"), 23 ("1st Opp'n"), 26 ("1st Reply"). The instant motion is suitable for determination without oral argument. Civ. L.R. 7–1(b). As set forth below, the Court GRANTS the motion.

## II. BACKGROUND

This Order assumes familiarity with the Court's March 14, 2012 denial of Altair's First Motion for Judgment on the Pleadings. ECF No. 30 ("1st Order").[1] To summarize, Altair, a technology company, anticipated entering into a substantial financial transaction, though the timing and nature of the transaction were uncertain. On July 8, 2010, Altair hired JMP to serve as its financial advisor for the transaction. The parties formalized their relationship in a written Agreement. ECF No. 1 ("Compl.") Ex. A ("Agr."). The Agreement provided JMP with a retainer fee. It also provided JMP with a contingent fee, payable after a completed transaction. The size of this fee would be determined by (1) the type of transaction that Altair consummated and (2) with whom. JMP would receive a certain percentage fee if Altair was sold to or merged with another company (the "sale/merger" fee)[2] and an-

---

1. *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 11–4498 SC, 2012 WL 892157, 2012 U.S. Dist. LEXIS 34549 (N.D.Cal. Mar. 14, 2012).

2. In actuality, two fee provisions apply in the sale/merger context: a flat fee in case of complete sale or merger and a "gross-up provision" in case of partial sale or merger. Agr. at 2, 3. Because the distinction is irrelevant

other, higher percentage fee if Altair secured a "strategic investment." In both cases, JMP's fee would be discounted if Altair's partner in the transaction was Yintong Energy Company Limited ("Yintong") or one of its corporate affiliates. 1st Order at 3–4 (citing and summarizing provisions). In addition to its fee-setting provisions, the Agreement included two more clauses that are relevant to this motion. First, the Agreement contains a choice-of-law clause stating that it "shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any principles of conflicts of law." Agr. at 5. Second, the Agreement incorporates an attached Indemnification Agreement indemnifying JMP against claims "relating to or arising out of" the Agreement. Agr. Ex. A ("Indem. Agr.") at A–1.

In July 2011, Altair and Yintong completed a transaction which, all parties concede, was covered by the Agreement. Roughly $57.5 million changed hands. Compl. ¶ 30. Nevertheless, Altair allegedly has not yet made good on its promise to pay JMP the contingent fee. *Id.* ¶ 31. The parties cannot agree on what type of transaction Altair completed and, therefore, on the size of JMP's fee.

In September 2011, JMP sued Altair for (1) breach of contract, (2) promissory estoppel, (3) fraud, and (4) negligent misrepresentation. Compl. ¶¶ 39–64. JMP's breach of contract claim is actually two claims in one. The first concerns the size of the fee owed to JMP under the Agreement (the "fee claim"); JMP pled this claim using three alternative theories of breach, each related to a different fee-setting provision in the Agreement. *Id.*

¶¶ 41–43. The second concerns JMP's alleged contractual right to reimbursement from Altair for JMP's attorney fees in this lawsuit (the "attorney fee claim"). *Id.* ¶ 44.

In November 2011, Altair brought a motion for judgment on the pleadings which challenged JMP's attorney fee, promissory estoppel, fraud, and negligent misrepresentation claims, as well as two of the three theories underpinning the fee claim.[3] JMP opposed the motion. Notably, although the parties' papers described the case as a straightforward matter of contract interpretation, they also hinted that it might be something more. First, both parties used New York law to brief the breach of contract claims (that is, the fee and attorney fee claims) but California law to brief the other claims, despite the clause in the Agreement selecting New York law. Second, the briefs contained a series of footnotes in which the parties gestured toward conflict-of-law issues without ever really joining them. To summarize, the parties assured the Court that the case presented no conflicts of law—but that, if it did, the conflict would favor their side. 1st MJP at 16 n. 4; 1st Opp'n at 14 n. 7, 15 n. 8, 21 n. 14; 1st Reply at 8 n. 3, 9 n. 4. These apparent assurances had the opposite of their intended effect and spurred the Court to undertake sua sponte the choice-of-law analysis that the parties seemed pointedly to be avoiding. 1st Order at 8–15.

With one exception, the Court determined that JMP's claims were governed by the substantive law of New York. *Id.* at 15. Because the parties had briefed the fee claim using New York law, the Court

---

here, the Court treats the sale/merger scenario as providing a single fee.

**3.** The Court left all three theories undisturbed, 1st Order at 21, and Altair (properly)

has not renewed its challenge to the fee claim in this motion. Accordingly, the fee claim may proceed as pled in the Complaint.

applied that body of law, ultimately denying Altair's motion with respect to that claim. *Id.* at 15–20. With respect to the promissory estoppel, fraud, and negligent misrepresentation claims, the Court determined that, by briefing California rather than New York law, the parties had failed to place the correct rules of decision before the Court. *Id.* at 15. Because Altair was the moving party and therefore bore the burden of persuasion, the Court denied Altair's motion with respect to those claims. *Id.* Finally, with respect to the attorney fee claim, the Court determined that the parties had not adequately briefed the issue of which law applied. *Id.* at 12–14. The Court therefore denied Altair's motion with respect to that claim. *Id.* at 14.

Now Altair has filed a Second Motion for Judgment on the Pleadings. The instant motion explicitly articulates the steps of the choice-of-law analysis that the last motion omitted, then refers the Court to the first round of briefing for the merits. With the choice-of-law analysis now fully briefed, the Court can determine whether Altair is entitled to judgment on the pleadings.

## III. DISCUSSION

### A. JMP's Procedural Challenge

■ As a preliminary matter, JMP challenges Altair's right to bring the instant motion, saying it is merely a motion for reconsideration filed under a different name.2d Opp'n at 3–5. In this district, motions to reconsider an interlocutory order in a civil case: may only be filed after seeking and receiving the leave of the Court; may not duplicate arguments made the first time around; and must be based on a showing that either (1) the parties excusably erred as to the material facts or controlling law, despite reasonable diligence, (2) the law or facts have materially changed since the order issued, or (3) the

court manifestly failed to consider a material fact or dispositive argument presented to it. Civ. L.R. 7–9. JMP argues that, under this standard, the instant motion is both substantively and procedurally improper: substantively improper because Altair offers new arguments that it could have but did not make, and procedurally improper because Altair did not seek leave to file it. JMP urges the Court to deny Altair's motion in summary fashion in the interests of judicial economy and finality.2d Opp'n at 5.

The Court concludes, however, that the values of economy and finality are better served by considering Altair's motion than by summarily rejecting it. First, if the Court were to do as JMP asks and read the instant motion as one for reconsideration, the Court would be inclined to grant it. The Court takes Altair's position to be that the Court erred in concluding that New York substantive law applied to all of JMP's claims, though Altair, understandably but unnecessarily, seems reluctant to say this in so many words. *See, e.g.,* 2d Reply at 6. The Court reached its conclusion after conducting a choice-of-law analysis omitted by the parties. These parties are not, of course, the first people ever to dodge choice-of-law issues, which can be difficult, even arcane. *See, e.g., ABF Capital Corp. v. Grove Properties Co.,* 126 Cal.App.4th 204, 214–15, 23 Cal.Rptr.3d 803 (Cal.Ct.App.2005) (criticizing courts who have "simply passed over" required choice-of-law analysis). For the reasons detailed in the next section, the Court is persuaded that its earlier choice-of-law analysis is worth revisiting.

Given that reality, as well as the failure of both parties (not just Altair) to articulate the choice-of-law issues raised in this case, the Court is inclined to take the instant motion on its own terms. The issues briefed here were not adequately

considered by either party's initial papers, and the Court does not discern any improper purpose behind Altair's filing of the instant motion. On the contrary, the motion serves the useful purpose of narrowing the issues for trial or possible settlement, and Altair has been careful only to supplement its previous briefing in conformity with guidance provided by the Court.

█ Summary denial at this point would only result in wasteful and empty formality, since denying the motion likely would prod Altair to file a motion for reconsideration, which the Court would be inclined to grant. The Court's local rules are meant to streamline the administration of justice, not complicate it. Moreover, those rules do nothing to limit the Court's "inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (citing *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir.1981); Fed.R.Civ.P. 54(b)). In the extremely unusual circumstances of this case, punctilious enforcement of the local rule's technical requirements would do more harm than good; accordingly, the Court declines to dismiss the instant motion in summary fashion and instead proceeds to its substance.[4]

### B. *Choice of Law*

█ As the Court recognized in its earlier Order, when confronted with a choice-of-law question, a federal district court sitting in diversity must use the choice-of-law rules of its forum state to determine which state's substantive law to apply. 1st Order at 9–10 (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir.2005)). This Court therefore applies California's choice-of-law rules. When a contract contains a choice-of-law provision, courts applying California's choice-of-law rules follow *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (Cal.1992). This Court followed the *Nedlloyd* analysis in the First Order. When the Court reached the question of which claims fell within the scope of the Agreement's choice-of-law clause, the Court cited *Nedlloyd* for the proposition that it encompassed all claims "arising from or related to" the Agreement, regardless of whether they were characterized as contract or tort claims and including "tortious breaches of duties emanating from the agreement." 1st Order at 14 (quoting *Nedlloyd*, 3 Cal.4th at 470, 11 Cal.Rptr.2d 330, 834 P.2d 1148).[5] Applying this rule, the Court held that all four of JMP's claims were governed by the Agreement's choice-of-law clause and therefore would be decided under the substantive law of New York state. *Id.* at 15.

In its second motion, Altair points out that, under California's choice-of-law rules, the scope of the claims covered by a choice-of-law agreement "is a matter that ordinarily should be determined under the law designated therein." *Washington Mut. Bank, FA v. Superior Court*, 24 Cal.4th 906, 916 n. 3, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001) (citing *Nedlloyd*, 3 Cal.4th at 469 n. 7, 11 Cal.Rptr.2d 330, 834 P.2d 1148). In *Nedlloyd*, the California

---

4. Nothing in this Order should be construed to create any sort of exception to or expansion of Civil Local Rule 7–9.

5. As set forth more fully in Section III.C.4 *infra*, JMP's fraud and negligent misrepresentation claims are based on Altair's alleged promise and subsequent refusal to pay JMP a certain fee; the promises were, according to JMP, either frauds or negligent misrepresentations. *See* Compl. ¶¶ 51–64. Thus, JMP's fraud and negligent misrepresentation claims rest on Altair's alleged tortious breaches of Altair's contractual duty to pay JMP the promised fee.

**1036**

Supreme Court interpreted the scope of a contract's choice-of-law clause. The clause selected Hong Kong law, but the parties had neither briefed nor requested judicial notice of that jurisdiction's laws. The *Nedlloyd* court held that the question of the scope of the choice-of-law clause should be determined by Hong Kong law, but, given that it did not have Hong Kong law before it, the court used California law instead. *Nedlloyd*, 3 Cal.4th at 469 n. 7, 11 Cal.Rptr.2d 330, 834 P.2d 1148; *see also* Restatement (Second) of Conflict of Laws § 136 cmt. h (1971). In short, the *Nedlloyd* court applied California law only because it did not have the correct body of law before it.

Altair argues that *Nedlloyd* therefore counsels this Court to use New York law to determine the scope of the Agreement's choice-of-law clause, because, unlike in *Nedlloyd*, the parties have placed the applicable New York law before the Court.2d MJP at 8. JMP does not dispute this point, and the Court agrees with it. The scope of a contract's choice-of-law clause is determined by the body of law identified in the agreement, unless the agreement specifies a different scope. *Washington Mut.*, 24 Cal.4th at 916 n. 3, 103 Cal.Rptr.2d 320, 15 P.3d 1071; *see also Batchelder v. Kawamoto*, 147 F.3d 915, 918 n. 2 (9th Cir.1998). Accordingly, because the Agreement at issue in this case identifies New York law and does not specify otherwise, the Court applies New York law to determine which of JMP's claims the Agreement covers.

New York differs from California in its approach to determining the scope of a choice-of-law clause. Under the California approach, all claims "arising from or related to" a contract are covered by the contract's choice-of-law clause, regardless of whether they are characterized as contract or tort claims. *Nedlloyd*, 3 Cal.4th at 470, 11 Cal.Rptr.2d 330, 834 P.2d 1148.

But the New York approach distinguishes between these types of claims: "Under New York law, choice-of-law clauses are deemed to apply only to claims that are based on rights conferred by the agreement." *Sarandi v. Breu*, C 08–2118 SBA, 2009 WL 2871049, at *4 (N.D.Cal. Sept. 2, 2009) (citing *Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 ("*Fin. One*") (2d Cir.2005)). This means that claims arising from tortious breaches of contractual duties are, under New York law, not covered by the contract's choice-of-law clause. *See Fin. One*, 414 F.3d at 335. Even claims based on the contract law doctrine of promissory estoppel are regarded as extra-contractual (because promissory estoppel applies only in the absence of an enforceable contract) and therefore fall outside the scope of a contract's choice-of-law provision. *Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc.*, 02 CV. 7666(LBS), 2005 WL 1123735, at *4 (S.D.N.Y. May 11, 2005) (applying New York law). Under these rules, it is clear that only those claims based on Altair's alleged breaches of rights conferred by the Agreement fall within the scope of the Agreement's choice-of-law clause. Accordingly, the Court holds that JMP's fee claim and (because JMP alleges that it is based on rights conferred by the Agreement) attorney fee claim fall within the scope of the Agreement's clause selecting New York law. JMP's extra-contractual promissory estoppel, fraud, and negligent misrepresentation claims do not.

This holding raises two subordinate questions. First, does any conflict of law prevent the Court from applying New York law to the fee and attorney fee claims? Second, if New York law does not apply to the extra-contractual claims, which state's law does?

The Court answers the first question in the negative: No conflict with California

law prevents the Court from applying New York law to the fee claim and attorney fee claim. Previously, the Court determined that the parties had raised the possibility of such a conflict and that Altair had not completed the analysis that would allow the Court to determine whether the possibility was a reality. 1st Order at 12–13. Altair has since done so. 2d MJP at 4–5. In brief, California and New York conflict in their treatment of unilateral attorney fee provisions: California has a fundamental policy against unilateral attorney fee provisions, while New York allows them. Hence, California's fundamental policy regarding unilateral attorney fee provisions is in conflict with New York law. *See ABF Capital,* 126 Cal.App.4th at 223, 23 Cal.Rptr.3d 803. If the Court found such a provision here, being bound by California's choice-of-law rules (*see Fields,* 413 F.3d at 950), the Court would be required to enforce California's fundamental policy against such clauses. However, the Court concludes that the plain language of the Agreement contemplates only indemnification from the costs of third-party suits and does not give rise to a unilateral right to attorney fees in "intra-party" litigation. Because the Court determines that the Agreement does not provide either party with a unilateral right to attorney fees, the Court agrees with the parties that the merits of JMP's attorney fee claim should be determined under New York law.[6]

█ Turning to the second question— which state's laws apply to the extra-contractual claims if not New York's law-the Court determines that California law applies. In the absence of an effective choice-of-law agreement, California choice-of-law rules permit a court to apply the

decisional rules of its forum state "unless a party litigant timely invokes the law of a foreign state." *Washington Mut.,* 24 Cal.4th at 919, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (internal quotation marks omitted). Here, JMP has not timely invoked foreign law with respect to the extra-contractual claims. During the first round of briefing, JMP joined Altair in briefing these claims using California law, and JMP has done the same in briefing this motion. *See* 1st Opp'n at 14–16; 2d Opp'n at 6–7. Therefore, the Court deems JMP to have acquiesced in the application of California law to the extra-contractual claims. *See Hatfield v. Halifax PLC,* 564 F.3d 1177, 1184 (9th Cir.2009).

Having ascertained that New York law applies to JMP's contract-based claims (i.e., its attorney fee claim, as well as the fee claim that already has survived a challenge from Altair) and that California law applies to the extra-contractual claims, the Court now proceeds to the merits of Altair's Second Motion for Judgment on the Pleadings.

## C. *Motion for Judgment on the Pleadings*

### 1. **Legal Standard**

█ "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.

---

6. Both parties seek application of New York law to the attorney fee claim.2d Opp'n at 8 ("Altair does not dispute that the Agreement is governed by New York law ....."), 2d Reply at 2 ("JMP does not dispute that applying

New York law regarding whether an indemnity provision permits the recovery of attorneys' fees presents no conflict with a fundamental policy of California.").

1989). Moreover, a motion for judgment on the pleadings is subject to the same standard of review as a motion to dismiss, and thus the pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir.2009); *see also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir.2011) (citing *Johnson*). A claim is plausible on its face when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### 2. Attorney Fees

 JMP bases its breach of contract claim for attorney fees on the four corners of the Agreement, including the incorporated Indemnification Agreement, both of which JMP attached to the Complaint. JMP's attorney fee claim is therefore amenable to judgment on the pleadings because it only requires the Court to interpret the effect of the contract's undisputed terms. *See Hal Roach Studios*, 896 F.2d at 1550; *see also* Wright & Miller, 5C *Fed. Prac. & Proc. Civ.* § 1367 (3d ed.). The only question is whether the Agreement or Indemnification Agreement provides JMP with a right to have Altair pay JMP's attorney fees arising from the instant, intra-party litigation (as compared to a lawsuit filed by a third party). The Court concludes that neither does.

The Court reaches this conclusion in reliance on *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903 (1989). In that case, the high court of the state of New York noted that under New York law the general rule is that "attorney's fees are incidents of litigation" and that parties

therefore bear their own attorney fees unless there is a legal reason to do otherwise. *Hooper*, 74 N.Y.2d at 491, 549 N.Y.S.2d 365, 548 N.E.2d 903. Beginning from this premise, the court observed that

> [w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed. The promise should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances. Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise.

*Hooper*, 74 N.Y.2d at 491–92, 549 N.Y.S.2d 365, 548 N.E.2d 903 (citations omitted).

In this case, nothing in the language of the Agreement or the incorporated Indemnity Agreement, or in the facts and circumstances surrounding the execution of the Agreement, "unmistakably" shows that the parties intended to give JMP a contractual right to recover attorney fees from Altair if the fees arose from litigation between them. In other words, there is no reliable evidence that JMP and Altair intended the Indemnification Agreement to cover claims between themselves. The Indemnity Agreement contains merely "general language indemnifying any breach," which "is not specific enough to allow the court to infer that the parties intended the indemnification of counsel fees in an action on the contract." *Foster Poultry Farms Inc. v. Suntrust Bank*, 355 F.Supp.2d

1145, 1152 (E.D.Cal.2004) (applying New York law) (internal quotation marks and citations omitted).

■■■ JMP argues that, read as a whole, the Indemnification Agreement clearly gives JMP a right to intra-party indemnification because it contains not only general indemnification language but also provisions that specifically target third-party claims. According to JMP, the Court can only give effect to all the language of the contract by reading the general language to cover claims between the contracting parties while the more specific language covers third-party claims. 1st Opp'n at 13. This argument rests on a faulty premise: While it is true that the Indemnification Agreement clearly contemplates third-party claims, that is not enough. There must be some further indication that the parties specifically contemplated intra-party claims and affirmatively determined to indemnify a party for attorney fees arising from such claims. *Hooper*, 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903; *Foster Poultry*, 355 F.Supp.2d at 1152. The mere presence of specific language amidst general language does not overcome the presumption against intra-party indemnification, by implication as it were. "Language providing indemnification for action on the contract must be expressly present." *Foster Poultry*, 355 F.Supp.2d at 1152. Reading the Indemnification Agreement in its entirety and examining the circumstances surrounding the drafting of the Agreement, the Court finds nothing that rises to the required level of specificity. The Court therefore concludes that the Indemnification Agreement covers only third-party claims.

JMP cites to a line of New York cases where courts read contracts in the manner urged by JMP here, but the cases are distinguishable. In each one, the court encountered particular facts or contract language that unmistakably demonstrated that the parties had distinguished between third-party and intra-party actions and affirmatively opted to provide a right of indemnity in the latter case. *See Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177–79 (2d Cir.2005) (drafting history showed intent to provide intra-party indemnification); *Pfizer, Inc. v. Stryker Corp.*, 348 F.Supp.2d 131, 145–46 (S.D.N.Y.2004) (indemnification for breach of warranty of representation did same); *Promuto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 650–52 (S.D.N.Y.1999) (explicit cap on damages in action between the parties did same).[7] JMP identifies nothing within or outside the four corners of the Agreement that reliably indicates a similar intent here.

On the contrary, as Altair points out, the Indemnification Agreement's inclusion of both notice-of-claim and assumption-of-defense clauses evinces an intent to cover only third-party claims. 1st MJP at 15. To apply these provisions to litigation between the parties would be absurd: JMP would be required to provide Altair with notice that JMP had sued Altair, and Al-

---

7. JMP also cites to *Sagittarius Broad. Corp. v. Evergreen Media Corp.*, 243 A.D.2d 325, 663 N.Y.S.2d 160 (N.Y.App.Div.1997). In that case, a New York state appellate panel distinguished *Hooper* and found a right to intra-party indemnification. However, the panel's terse, three-paragraph opinion does not reproduce the contract language upon which it relied. Nor does the panel's one-sentence analysis of the contract provide reliable clues. *See id.* at 326, 663 N.Y.S.2d 160 ("Here, the first sentence of the subject clause cannot reasonably be interpreted as limited to third-party claims, particularly in view of the second portion of that clause, which clearly pertains to third-party actions, thereby rendering the first part mere surplusage were it only applicable, as defendant maintains, to third-party actions."). The Court can give *Sagittarius* no weight because the Court cannot discern whether the contract at issue there resembles the one here.

tair would be presumptively entitled to select JMP's counsel and control JMP's litigation of the case. By including these provisions, the parties signaled that they did not intend the indemnification agreement to apply to intra-party lawsuits.[8] *See Goshawk Dedicated Ltd. v. Bank of New York,* 06 CIV. 13758(MHD), 2010 WL 1029547, at *6 (S.D.N.Y. Mar. 15, 2010). This conclusion is further supported by the Indemnification Agreement's having explicitly contemplated the possibility of third-party actions in the form of private securities litigation. *Id.* at *7; Indem. Agr. at A–1.

 Lastly, JMP argues that even if the Indemnification Agreement does not provide an attorney fee provision, the Agreement itself does. 1st Opp'n at 14. The sentence on which JMP relies provides, in full: "Whether or not there is a closing of the Transaction, you [Altair] will reimburse us [JMP] periodically upon our request for our reasonable expenses incurred in connection with the Transaction, including, without limitation, the reasonable fees and expenses of legal counsel and travel expenses." Agr. at 3. This is mere boilerplate, and it falls short of the sort of unmistakable, clear, explicit language required by *Hooper.* "A clause indemnifying the party for 'reasonable counsel fees' that is not exclusively or unequivocally referable to claims between the parties themselves, is insufficiently clear to overcome the general rule" that attorney fees are incidents of litigation. *Broadhurst Investments, LP v. Bank of New York Mellon,*

09 CIV. 1154(PKC), 2009 WL 4906096, at *2 (S.D.N.Y. Dec. 14, 2009) (quoting *Hooper,* 74 N.Y.2d at 492, 549 N.Y.S.2d 365, 548 N.E.2d 903) (internal quotation marks omitted).

Under New York law, nothing in the Agreement or in the Indemnification Agreement provides JMP with a contractual right to indemnification for attorney fees incurred in the instant litigation. Accordingly, Altair's Second Motion for Judgment on the Pleadings is GRANTED with respect to JMP's attorney fee claim. That claim is DISMISSED WITH PREJUDICE.

### 3. Promissory Estoppel

 The Court now turns to JMP's extra-contractual claims, and hence to California law, beginning with JMP's claim for promissory estoppel.

> Promissory estoppel requires: (1) a promise that is clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her reliance. The purpose of this doctrine is to make a promise that lacks consideration (in the usual sense of something bargained for and given in exchange) binding under certain circumstances.

*Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc.,* 688 F.Supp.2d 940, 953 (N.D.Cal.2010) (citations omitted). Under this standard, JMP's claim for promissory estoppel must fail because no

---

**8.** JMP points to these very provisions to support its position, saying that they "explicitly apply only to actions 'brought *against* any Indemnified Person' " and therefore support a reading that the Indemnification Agreement contemplates both third-party and intra-party lawsuits. 1st Opp'n at 13 (quoting Indem. Agr. at A–1) (emphasis in original). Assuming arguendo that this language is as explicit as JMP says it is, the Indemnification Agreement

defines "Indemnified Person" as, in short, JMP. Indem. Agr. at A–1. JMP is the plaintiff in this lawsuit, hence the instant action is not one "against" JMP. JMP's argument fails on its own terms, then, because the Court must strictly construe the Indemnification Agreement "to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper,* 74 N.Y.2d at 491, 549 N.Y.S.2d 365, 548 N.E.2d 903.

party disputes that the promises at issue here were supported by consideration. Indeed, JMP's breach of contract claim is based in large part on Altair's failure to pay the contractually required consideration. *See* Compl. ¶¶ 40–43. Under California law, the same allegations that give rise to a breach of contract claim cannot also "give rise to a claim for promissory estoppel, as the former [is] predicated on a promise involving bargained-for consideration, while the latter is predicated on a promise predicated on reliance in lieu of such consideration." *Co–Investor, AG v. FonJax, Inc.*, C 08–01812 SBA, 2008 WL 4344581, at *3 (N.D.Cal. Sept. 22, 2008).

■ Here, JMP argues that the allegations giving rise to its promissory estoppel claim are different from those supporting its claim for breach of contract. 1st Opp'n at 16. JMP points to the allegations that it (1) prepared a Fairness Opinion for Altair and (2) acted as a placement agent in a small securities offering by Altair, one much smaller than JMP would usually undertake. *Id.;* Compl. ¶¶ 27, 49, 54; *see also* Compl. Ex. B–3 at 81–86 ("Fairness Op."). Beginning with the Fairness Opinion, JMP concedes that the Agreement called for JMP to prepare a Fairness Opinion for Altair. 1st Opp'n at 16 n. 10 (citing Agr. at 1). But JMP states that the Agreement called for JMP to provide a Fairness Opinion only if Altair undertook a sale or merger—not if Altair undertook a strategic investment, as JMP says it did. *Id.* at 16. Altair responds that, because the transaction was in fact a sale or merger under the Agreement, JMP did nothing more than perform its duties under the Agreement in rendering the Fairness Opinion. 1st Reply at 10.

This dispute demonstrates why JMP's claim for promissory estoppel is barred by its breach of contract claim: The only thing at issue here is under which provision of the contract JMP will be paid for its services, not whether there was a contract for services at all or whether the promises contained in the contract were supported by consideration. Whether the transaction was a strategic investment, as JMP contends, or a sale or merger, as Altair contends, JMP promised to provide financial services for a percentage-based fee. *See* Agr. at 1. A careful reading of the Agreement shows that the parties purposely left the definition of which services JMP would provide open-ended. *Id.* The Agreement provides: "You [Altair] have engaged us [JMP] to advise you concerning opportunities for maximizing shareholder value, and we will render to you such services as we mutually agree are necessary or appropriate in connection with these opportunities." Agr. at 1. The Agreement then gives examples of some of the services JMP may agree to be "necessary or appropriate"; the list ends with the example of JMP "advis[ing]" Altair "on matters related to investments or acquisitions." *Id.* Whether the Fairness Opinion pertained to a sale, merger, or strategic investment, there can be no serious doubt that JMP rendered it pursuant to the Agreement, in consideration for Altair's promise to pay under the Agreement. The same reasoning applies to JMP's agreement to provide placement-agent services: There is no allegation that this service was not "mutually agree[d]" to be "necessary or appropriate in connection with" JMP's engagement by Altair. Serving as a placement agent for a small securities offering, as a client perquisite or otherwise, falls squarely within the Agreement's expansive definition of JMP's bargained-for performance.

■ Both of the detrimental acts alleged by JMP, then, were JMP's required performance under the contract. No party disputes that JMP's promise to perform under the contract is supported by consid-

eration. The only question is how much consideration. The purpose of the doctrine of promissory estoppel is to permit a court of equity to excuse the absence of consideration for an otherwise enforceable promise. *See Youngman v. Nevada Irr. Dist.,* 70 Cal.2d 240, 249, 74 Cal.Rptr. 398, 449 P.2d 462 (1969) (doctrine of promissory estoppel appropriate "if injustice can be avoided only by its enforcement"). The doctrine of promissory estoppel simply does not apply to the circumstances of this case. *Id.* ("If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable.").

Altair raises several other grounds for dismissing JMP's promissory estoppel claim, but the Court need not reach them. The Court GRANTS Altair's motion with respect to JMP's promissory estoppel claim. Accordingly, that claim is DISMISSED WITH PREJUDICE.

### 4. Fraud and Negligent Misrepresentation

■ In addition to its two claims sounding in contract, JMP brings two claims sounding in tort: fraud and negligent misrepresentation. Under California law, these torts have essentially the same elements, except for the tortfeasor's requisite state of mind: The former requires scienter while the latter requires only negligence.[9] Not surprisingly, the allegations underlying JMP's two tort claims are substantially identical except for the state-of-

mind allegations. *Compare* Compl. ¶ 56 (alleging scienter) *with id.* ¶ 61 (alleging negligence). As explained below, both tort claims are barred for the same reason, independent of any state-of-mind allegations.

To summarize, JMP alleges that Altair misrepresented to JMP on numerous occasions that Altair would pay JMP the higher fee associated with a strategic investment when all along Altair knew that it would not. Compl. ¶¶ 25–26, 51–64. JMP says it rendered particular services in reliance on these alleged falsehoods, namely, the Fairness Opinion and placement-agent services discussed in the previous section. *Id.* ¶ 54.

■ Altair says that it is entitled to judgment on the pleadings with respect to JMP's tort claims because both claims are barred by California's economic loss rule.[10] The Court agrees. The economic loss rule, in summary, "is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *Oracle USA, Inc. v. XL Global Services, Inc.,* C 09–00537 MHP, 2009 WL 2084154, at *4 (N.D.Cal. July 13, 2009). This rule serves to prevent every breach of a contract from giving rise to tort liability and the threat of punitive damages: "Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other." *Robinson Heli-*

---

9. In addition to the requisite state of mind, both require misrepresentation, justifiable reliance, and damages. *Compare Robinson Helicopter Co., Inc. v. Dana Corp.,* 34 Cal.4th 979, 990, 22 Cal.Rptr.3d 352, 102 P.3d 268 (2004) (fraud) *with Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1201 n. 2 (9th Cir.2001) (negligent misrepresentation).

10. Altair also challenges JMP's tort claims as insufficiently pled under Rule 9(b)'s height-

ened pleading standard for fraud. That standard obviously applies to JMP's fraud claim, and also applies to its negligent misrepresentation claim. *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.,* ("*United*") 660 F.Supp.2d 1163, 1179 (C.D.Cal.2009). Because the Court disposes of the claims on other grounds, the Court need not consider this challenge and assumes that the tort claims are sufficiently pled.

*copter*, 34 Cal.4th at 988, 22 Cal.Rptr.3d 352, 102 P.3d 268 (internal quotation marks and brackets omitted).

While the economic loss rule is simple to grasp in the abstract, particular applications sometimes can be "conceptually difficult." *United*, 660 F.Supp.2d at 1180; *see also Erlich v. Menezes*, 21 Cal.4th 543, 551–52, 87 Cal.Rptr.2d 886, 981 P.2d 978 (1999) (listing multiple exceptions to rule). This case, however, presents a direct application of the rule. Put simply, JMP has taken the allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts. The tort claims consist of nothing more than Altair's alleged failure to make good on its contractual promises. In pleading the reliance element shared by both torts, JMP points to its having rendered the Fairness Opinion and served as Altair's placement agent. But, as explained above, these acts constitute nothing more than JMP's usual performance under the Agreement. As JMP concedes in its Complaint, the parties "contemplate[d] a broad range of possible services that may be provided by JMP," the range being limited only by the parties' mutual agreement. Compl. ¶ 11.

JMP argues that *Robinson Helicopter* removes its tort claims from the scope of the economic loss rule. The Court disagrees. First, this Court, like others in California, doubts that *Robinson Helicopter* has any application outside the products liability context in which it was decided. *United*, 660 F.Supp.2d at 1183; *Oracle USA*, 2009 WL 2084154, at *6. On the contrary, the economic loss rule seems particularly suited to commercial transactions. *Cf. Robinson Helicopter*, 34 Cal.4th at 988, 22 Cal.Rptr.3d 352, 102 P.3d 268 (rule "hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protect-

ed by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts"); *United*, 660 F.Supp.2d at 1180 ("[T]he rule is particularly strong when a party alleges 'commercial activities that negligently or inadvertently went awry.'") (quoting *Robinson Helicopter*, 34 Cal.4th at 991 n. 7, 22 Cal.Rptr.3d 352, 102 P.3d 268).

Second, the *Robinson Helicopter* court expressly described its holding as being "limited to a defendant's affirmative misrepresentations on which a plaintiff relies *and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss.*" 34 Cal.4th at 993, 22 Cal.Rptr.3d 352, 102 P.3d 268 (emphasis added). JMP offers no allegations that it has been exposed to liability for "personal damages," nor could it in the context of this commercial transaction for financial advisory services. Therefore, this case falls outside the ambit of *Robinson Helicopter*. *See Oracle USA*, 2009 WL 2084154, at *6 ("The only harm to [plaintiff] was its failure to receive payment; therefore, there is no physical injury or possibility of physical injury resulting from [defendant's] conduct. Nothing that [defendant] has allegedly done has exposed [plaintiff] to liability to any third party for personal damages or any other type of loss. The exposure to liability for personal damages was key to *Robinson Helicopter*'s holding that the economic loss rule did not bar tort remedies in that case."). JMP has simply failed to allege any conduct "which is independent from the various promises made by the parties in the course of their contractual relationship." *Id.* at *4.

Lastly, policy considerations do not favor excusing JMP from the eco-

nomic loss rule. The rule·generally means that courts "enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." *Robinson Helicopter*, 34 Cal.4th at 991–92, 22 Cal.Rptr.3d 352, 102 P.3d 268 (internal brackets omitted). "[C]ourts should be careful to apply tort remedies only when the conduct in question is so clear in its deviation from socially useful business practices that the effect of enforcing such tort duties will be to aid rather than discourage commerce." *Id.* at 992, 22 Cal. Rptr.3d 352, 102 P.3d 268 (internal brackets, ellipses, and quotation marks omitted). Here, Altair's alleged conduct is not so clearly deviant as to warrant the imposition of tort remedies. The dispute between Altair and JMP comes down to a dispute over whether JMP will be paid a 1.5 percent commission or a 4 percent commission; JMP's assertions of tortious conduct come down essentially to a claim that Altair not only broke its promises, but did so in bad faith. A tort cause of action will not lie on those facts. *Foster Poultry Farms v. Alkar–Rapidpak–MP Equip., Inc.*, 868 F.Supp.2d 983, 993–94, 1:11–CV–00030 AWI, 2012 WL 1207152, at *7 (E.D.Cal. Apr. 11, 2012). This is because the fraudulent misrepresentations alleged by JMP are "also alleged to be a stand-alone contract." *Id.* Such claims must be barred by the economic loss doctrine to preserve the policies underlying contract law from being overwhelmed by those underlying tort law. *Id.* "Virtually any time a contract has been breached, the party bringing suit can allege that the breaching party never intended to meet its obligations. To allow fraud claims in actions such as this one would collapse the carefully-guarded distinction between contract and tort law." *Id.* (quoting *Oracle*, 2009 WL 2084154, at *7) (ellipses and brackets omitted).

The Court perceives no way that JMP could save its fraud or negligent misrepresentation claims by amending its pleading. However they are framed, they come within the scope of the economic loss rule. Accordingly, the Court GRANTS Altair's Second Motion with respect to JMP's claims for fraud and negligent misrepresentation. Those claims are DISMISSED WITH PREJUDICE.

## IV. *CONCLUSION*

For the foregoing reasons, the Court GRANTS Altair's Second Motion for Judgment on the Pleadings. The Court DISMISSES WITH PREJUDICE JMP's breach of contract claim insofar as it is premised on a contractual right for attorney fees arising from the Agreement or the incorporated Indemnification Agreement. The Court also DISMISSES WITH PREJUDICE JMP's promissory estoppel, fraud, and negligent misrepresentation claims. As set forth in the Court's March 14, 2011 Order, JMP's breach of contract claim for fees provided by the Agreement remains undisturbed.

JMP's prayer for punitive damages was based solely on its fraud and negligent misrepresentation claims. Compl. at 11. Because those claims have been dismissed, the Court STRIKES JMP's prayer for punitive damages.

The Court previously vacated the case management conference set for June 8, 2012. ECF No. 49. Having reviewed the parties' joint case management statement, ECF No. 48 ("CMS"), the Court determines that no case management conference is needed at this time. The Court APPROVES the schedule proposed by the parties, as modified herein. CMS ¶ 17. Trial in this matter is set for January 25, 2013. The pretrial conference is set for January 18, 2013. The last day for hearing dispositive motions is December 21,

2012. The discovery cutoff in this matter is September 28, 2012.

IT IS SO ORDERED.