**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

|  |  |
|---|---|
| CORONUS XES LTD., a Wyoming corporation; and MATTHEW AARSVOLD, a married individual,<br><br>                    Appellants,<br><br>          v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON, SUBSCRIBING TO POLICY NO. ESG00317241 with Unique Market References B087517C9N5007 and B1161LS12017, an unincorporated foreign insurance syndicate,<br><br>                    Respondents. | No. 83078-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — This appeal arises from an insurance coverage and bad faith lawsuit filed by Coronus XES, Ltd., and its president, Matthew Aarsvold (collectively Coronus), against Certain Underwriters at Lloyd's London (Underwriters).[1]  Coronus appeals the trial court's dismissal of its case based on forum non conveniens.  We affirm.

---

[1] The full name of the respondents is Certain Underwriters at Lloyd's London, Subscribing to Policy No. ESG00317241 with Unique Market References B087517C9N5007 and B1161LS12017.

I.

A.

Coronus XES Ltd. is a corporation organized under the laws of Wyoming with its principal place of business in California. Coronus is a wholly owned subsidiary of QX Acquisition Corp. which also has its principal place of business in California. Aarsvold is president of Coronus and QX Acquisition. Aarsvold is a legal resident of Minnesota and has never resided in Washington or done business in Washington. Underwriters are residents of the United Kingdom. In 2017, CFC Underwriting, Ltd. (CFC), acting as coverholder for Underwriters, issued a policy to QX Acquisition. The policy was negotiated and purchased through a surplus lines broker in California. The policy was underwritten by syndicates in the United Kingdom, issued by CFC in London, England, and delivered to QX Acquisition at its California headquarters.

The policy covered the period from August 7, 2017 to August 7, 2018. While Coronus is not named in the policy, Coronus qualifies as an "insured" by being a subsidiary of QX Acquisition. The policy also covers Aarsvold as president of QX Acquisition and Coronus. Generally, the policy covers commercial liability arising from the business activities of QX Acquisition. The policy contains a choice of law clause in favor of California.

B.

From 2013 to December 2016, Aarsvold served as Executive Vice President of Strategy for Higher Upstream, LLC. Aarsvold was appointed to the position by Daniel Webb, sole member and CEO of Higher Upstream. At Higher Upstream, Aarsvold provided project management and business analyst services to clients in Texas, Florida,

California, Utah, and Wisconsin. In December 2016, Aarsvold left Higher Upstream and became president and sole owner of QX Acquisition. Aarsvold formed Coronus in April 2017.

While employed at Higher Upstream, Aarsvold personally guaranteed a loan from Bright Morning Consulting, LLC (BMC), a Colorado company, to Higher Upstream. Higher Upstream defaulted on the loan. In January 2017, BMC sued Higher Upstream in Colorado and received a default judgment. Later, Higher Upstream changed its name to Red River Solutions, LLC. In June 2017, BMC sued Higher Upstream and its CEO, Webb, to attempt to collect the default judgment. BMC sued Higher Upstream and Webb in King County, Washington, because Webb was a resident of King County.

In October 2017, Webb filed a third-party complaint against Coronus and Aarsvold.[2] The third-party complaint alleged claims of breach of guaranty, misappropriation, conversion, embezzlement, and civil conspiracy to damage or misappropriate Webb's LLC membership interest in Red River. The third-party defendants filed multiple unsuccessful motions to dismiss based on lack of personal jurisdiction.

In July 2018, Coronus's counsel tendered the third-party claim to Underwriters for defense and indemnification under the policy issued to QX Acquisition. Underwriters acknowledged receipt, reserved their rights under the policy, and began an investigation. Underwriters hired a California law firm as coverage counsel. Throughout the investigation, Underwriters maintained that California law applied.

---

[2] The third-party complaint also pleaded claims against other defendants not at issue in this appeal.

Underwriters declined coverage on various grounds including that the allegations in the third-party complaint did not arise out of the insured's "business activities." Coronus's counsel then provided additional documents and requested that Underwriters reconsider the denial of coverage. Following more investigation, Underwriters reaffirmed the denial of coverage.

The suit resulted in a comprehensive settlement including dismissal of the third-party claims against Coronus and Aarsvold.

C.

After the underlying litigation settled, Coronus sued Underwriters in King County Superior Court, pleading claims for declaratory judgment, breach of contract, insurance bad faith, negligent claims handling, and violation of the Washington Consumer Protection Act (CPA), ch. 19.86 RCW. The complaint reserved a claim for violating the Washington Insurance Fair Conduct Act (IFCA), RCW 48.30.015.

Underwriters moved to dismiss for forum non conveniens arguing that none of the parties were Washington residents, the parties entered into their insurance contract in California, and all of the evidence related to the policy interpretation is in California or London, but not in Washington. The parties agreed at argument that the contract was covered by California law, but disputed what law applied to the tort extra-contractual claims.

The trial court granted defendant's motion to dismiss. The trial court later granted in part and denied in part Coronus's motion for reconsideration. In its revised order, the trial court included additional findings, but maintained its dismissal of Coronus's claims based on forum non conveniens.

-4-

Coronus appeals.

II.

A.

A motion to dismiss for forum non conveniens requires a fact specific analysis with numerous factors to be considered and weighed in the discretion of the trial court. J.H. Baxter & Co. v. Cent. Nat'l Ins. Co. of Omaha, 105 Wn. App. 657, 662, 20 P.3d 967 (2001). Thus, we review decisions based on forum non conveniens for an abuse of discretion. J.H. Baxter, 105 Wn. App. at 661. A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2016). "Rulings that are manifestly unreasonable or based on untenable grounds include those that are unsupported by the record or result from applying the wrong legal standard." Gilmore v. Jefferson County Pub. Transp. Benefit Area, 190 Wn.2d 483, 494, 415 P.3d 212 (2018). The reviewing court "may not find abuse of discretion simply because it would have decided the case differently—it must be convinced that no reasonable person would take the view adopted by the trial court." Gilmore, 190 Wn.2d at 494 (internal quotations omitted).

B.

Generally, a "plaintiff has the original choice to file his or her complaint in any court of competent jurisdiction." Sales v. Weyerhaeuser Co., 163 Wn.2d 14, 19, 177 P.3d 1122 (2008). Under the doctrine of forum non conveniens, trial courts have "the discretionary power to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought in another forum." J.H.

Baxter & Co., 105 Wn. App. at 661. "Essentially, the doctrine limits the plaintiff's choice of forum to prevent him or her from 'inflicting upon [the defendant] expense or trouble not necessary to [the plaintiff's] own right to pursue his remedy." Sales, 163 Wn.2d at 20 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507-508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)).

In deciding on forum non conveniens, the trial court "must balance certain private and public factors that determine the convenience of litigation in the alternative forum as opposed to the host forum." Sales, 163 Wn.2d at 20. This balancing requires first that the trial court determine that an adequate alternative forum exists. Sales, 163 Wn.2d at 20; Klotz v. Dehkhoda, 134 Wn. App. 261, 265, 141 P.3d 67 (2006). "[A]n alternative forum is adequate so long as some relief, regardless how small, is available should the plaintiff prevail." Klotz, 134 Wn. App. at 265. An alternate forum is inadequate only if the remedy provided is so clearly inadequate or unsatisfactory that it is no remedy. Hill v. Jawanda Transp. Ltd., 96 Wn. App. 537, 541, 983 P.2d 666 (1999). Moreover, a plaintiff cannot "defeat a motion to dismiss on the ground of forum non conveniens merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum." Vivendi S.A. v. T-Mobile, USA, Inc., 2008 WL 2345283, at *11 (W.D. Wash. June 5, 2008) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 247, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)).

The trial court found that California is an adequate alternate forum. The court found that California recognizes causes of action for breach of contract under an insurance policy, bad faith, consumer protection, and tortious breach of the implied

covenant of good faith and fair dealing for violating claim handling regulations. Coronus does not challenge the trial court's findings on adequate alternative forum on appeal.

C.

Coronus argues that the trial court's findings and conclusions on the private interest factors are not supported by substantial evidence. We disagree.

"[W]here the court has considered all relevant and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Creative Tech., Ltd. v. Aztec Sys. Pte., Ltd., 61 F.3d 696, 699 (9th Cir. 1995) (citing Piper Aircraft Co., 454 U.S. at 257).

The private interest factors require trial courts to consider the convenience of litigation in the alternate forum. The private factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Sales, 163 Wn.2d at 20 (quoting Gulf Oil, 330 U.S. at 508).

The trial court found that the private interest factors weighed against proceeding in Washington. The court found:

> [T]he essential issues in this case are insurance coverage and extra-contractual claims. The material witnesses that will testify in this action are in California or in states other than Washington. No witnesses to the insurance coverage question reside in Washington. Defendant's claim filing witnesses are in California. Plaintiff conceded that they had three witnesses in California. Moreover, the insurance dispute does not involve evidence in Washington State. Plaintiffs presumably maintain relevant business document[s] such as records of negotiation regarding the insurance policy in their business offices in Laguna Beach, California. All claim handling documents were exchanged between claim handlers in

California or United Kingdom. Again, none of the insurance coverage or claim handling documents would be in Washington.

The trial court's findings are supported by substantial evidence. All 10 of the witnesses cited by Underwriters in their disclosure of possible primary witnesses reside outside of Washington. Coronus's disclosure of primary witnesses included at least 13 witnesses outside of Washington and 16 within Washington. Coronus concedes that it included attorneys on that list who were merely consulted by Coronus but never appeared in the underlying case. Thus, it was not error for the trial court to find it unlikely that some of those witnesses would be called to testify.

While Coronus emphasizes the underlying King County case as reason enough for this case to be brought in King County, Underwriters assert that the main issues to be litigated are whether Underwriters had a duty to defend Coronus and whether there was negligent claim handling. Determining the duty to defend depends first on a comparison between the allegations of the complaint and terms of the policy, then on extrinsic facts known to the insurer either at the inception of the third-party lawsuit or at the time of tender. Hartford Cas. Ins. Co. v. Swift Distrib., Inc., 59 Cal. 4th 277, 287, 326 P.3d 253, 172 Cal. Rptr. 3d 653 (2014).

Underwriters argued, and the trial court agreed, that the bulk of the witnesses and evidence related to those issues are not within Washington. Both Coronus and QX Acquisition have their principal place of business in California, the insurance policy was obtained in California via a California broker, the policy contains a choice of law

provision in favor of California, and the tender was investigated for Underwriters by a California law firm.

Here, the trial court "evaluate[d] the materiality and importance of the anticipated evidence and witnesses' testimony" and determined their accessibility and convenience to the forum.  See Vivendi S.A., 2008 WL 2345283 at *12.  Because the trial court appropriately weighed the private interest factors, we conclude the trial court did not abuse its discretion.

D.

Coronus argues that the trial court erred in finding that all the public interest factors favor California.  We disagree.

The public interest factors to be considered are as follows:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin.  Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.  In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only.  There is a local interest in having localized controversies decided at home.  There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

Gulf Oil, 330 U.S. at 508-09.

The trial court considered the public interest factors, finding that they balanced in favor of litigation in California instead of Washington:

> The origins of the present case arise from the claim coverage dispute which was decided by claim handlers in California governing a California insured who had an insurance policy issued by [a] UK insurer with a California choice-of-law provision.  California has a strong public interest to protect its insureds and preside over policy insurance coverage

disputes that involve California policy holders. A jury of California residents would have an interest given the plaintiff is a corporate resident of California. In contrast, Washington has no interest in deciding an insurance dispute between a California company, a California resident, and a UK insurer. Given the court's finding that California law applies to the extra-contractual claims, California courts are a more proper forum to apply the laws that govern the case. California has a compelling interest in regulating insurance policies written pursuant to its insurance laws and issued to a California company and to determine the extra-contractual obligation created by those policies.

Coronus focuses most of its argument on the final Gulf Oil public interest factor—the appropriateness of having trial "in a forum that is at home with the state law that must govern the case." Sales, 163 Wn.2d at 20 (quoting Gulf Oil, 330 U.S. at 508-09). Because the insurance policy contained a choice of law provision in favor of California, the parties did not dispute that California law would apply to the contractual claims in this case. Instead, the parties argued over which law would apply to the extra-contractual tort and CPA claims.

At the outset, Coronus argues that the trial court erred by concluding that "the tort claims arise out of the insurance policy issued in California." In Washington, while a choice of law provision in a contract does not govern tort claims, it may be considered when applying the most significant relationship test. Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 159, 744 P.2d 1032 (1987). By its plain language, the "choice of law" clause in the policy appears broad and covers "a dispute between [Coronus] and [Underwriters] regarding this policy." Coronus's tort and CPA claims concern a dispute over Underwriter's failure to cover under the policy.[3]

---

[3] California law appears in accord. See Velasquez v. Truck Ins. Exch., 1 Cal. App. 4th 712, 720-22, 5 Cal. Rptr. 2d 1 (1981) (bad faith claim under fire insurance policy was on the policy because it sought to recover on the policy; other damage claims, such as those for cancellation of the policy, were inextricably bound up with the contract damage issue); JMP Sec. LLP v. Altair Nanotechnologies, Inc.,

Coronus cites O'Neill v. Farmers Ins. Co. of Wash., 124 Wn. App 516, 125 P.3d 134 (2004), to support its claim that the extra-contractual tort and CPA claims do not arise out of the underlying insurance policy. Coronus's reliance on O'Neill is misplaced. But O'Neill did not address whether tort and CPA claims arose out of a policy. Instead, the case concerned whether the contractual limitations period to bring claims under a homeowner's insurance policy should also apply to bar bad faith and CPA claims related to the handing of a claim under the policy. O'Neill, 124 Wn. App. at 529-31. The court followed precedence and concluded that the CPA's goal of protecting consumers by preserving statutory limitations periods for bad faith and CPA claims "'should not be frustrated'" by a shorter limitations period for bringing claims under the policy. O'Neill, 124 Wn. App. at 529-31 (citing Simms v. Allstate Ins. Co., 27 Wn. App. 872, 878, 621 P.2d 155 (1980)). The trial court did not err in finding that the extra-contractual claims arose out of the insurance policy.

Washington follows the "most significant relationship test" set out in Restatement (Second) Conflict of Laws § 145, to determine which state's law governs tort and CPA claims, Singh v. Edwards Lifesciences Corp., 151 Wn. App. 137, 143, 210 P.3d 337 (2009). "Where a conflict exists, Washington court's decide which law applies by determining which jurisdiction has the most significant relationship to the given issue." Singh, 151 Wn. App. at 143. The factors to be evaluated for their relative importance are: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation, and

880 F. Supp. 2d 1029 (N.D. Cal. 2012) (holding that a choice of law clause "encompasse[s] all claims 'arising from or related to' the agreement, regardless of whether they were characterized as contract or tort claims and including 'tortious breaches of duties emanating from the agreement.'").

place of business for the parties; and (d) the place where the relationship, if any, between the parties is centered.  Johnson v. Spider Staging Corp., 87 Wn.2d 577, 582, 555 P.2d 997 (1976); RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (AM. L. INST. 1971).  These factors are evaluated according to their relative importance to the issues at hand.  In a tort case, the most important factors are "the needs of the interstate and international systems, the relevant policies of the forum, the relevant policies of other interested states and particularly of the state with the dominant interest in the determination of the particular issue, and ease in the determination and application of the law to be applied."  Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co., 721 F. Supp. 2d 1007, 1016 (W.D. Wash. 2010).

The trial court considered the factors and determined that California had the most significant relationship:

> Here the tort claims arise out of the insurance policy issued in California and all decision-making was handled either in California or the United Kingdom.  None of the parties to this insurance coverage suit is a Washington resident or Washington citizen.  Plaintiff Coronus XES, Ltd. Is a Wyoming corporation with its principal place of business in Laguna Beach, CA.  Plaintiff Matthew Aarsvold, the president of Coronus, is a resident of California and rents property in Minnesota.  He never owned property or conducted business in Washington.  Defendant [Underwriters] are residents of the United Kingdom.  The relationship of these parties is centered either in California, or the UK, not Washington State.
>
> . . . .
>
> [T]he underlying action does not involve any physical injury/damage or insured operations in Washington.  There is no injury in Washington, no conduct causing injury in Washington, no party who resides in Washington, and the place where the relationship between the parties is centered is in California or the UK, not Washington.

-12-

Coronus argues the trial court erred in concluding that the there was no injury in Washington because of Underwriters failure to defend the King County case against them. Coronus cites several federal cases in support of the proposition that the place of the alleged injury for lack of performance of the duty to defend is where the underlying lawsuit was filed.

However, in the cases Coronus cites, the insurer failed to defend and a judgment was entered against the insured. Alaska Airlines, Inc. v. Endurance Am. Ins. Co., 2021 WL 4033297, at *5 (W.D. Wash. Sept. 3, 2021) (noting that the injury occurred in Washington where the insured incurred the costs of defending itself and where a court entered judgment against it); Travelers Prop. Cas. Co. of Am. v. AF Evans Co., 2012 WL 4113279, at *8 (W.D. Wash. Sept. 19, 2012) (observing that the injury occurred in Washington where the insurer failed to defend and the court entered a stipulated judgment against the insured). Here, the insurer did not defend Coronus in the suit filed in King County Superior Court, but the settlement resulted in the dismissal of third-party claims against Coronus. No judgment was entered against Coronus in Washington. Also, the Alaska Airlines court noted that "Logically, when an insurance company acts in bad faith or violates IFCA or CPA, its insured will experience that injury where the insured is located." Alaska Airlines, Inc., 2021 WL 4033297, at *5. (quoting MKB Constructors v. Am. Zurich Ins. Co., 49 F. Supp. 3d 814, 833 (W.D. Wash. 2014)). While Coronus did have to defend itself in Washington, Coronus is not located in Washington and none of the companies involved in the litigation have ever done business in Washington. While the first contact may be a close call, the trial court did not abuse its discretion in determining that the injury did not occur in Washington.

In determining the place where the conduct causing the injury occurred, courts generally consider where the insurance company makes its coverage decisions. See Alaska Airlines, 2021 WL 4033297, at *5 (holding, the conduct causing the injury did not occur in Washington or Oregon, thus the court gave no weight to this contact). This contact favors California as that is where Underwriters counsel investigated and denied coverage to Coronus.

Coronus next argues that the third and fourth factors were not supported by substantial evidence. We disagree. The location of the parties and place of their relationship favors California over Washington. Here, the trial court found that none of the parties were Washington residents. Coronus is a Wyoming corporation with its principal place of business in Laguna Beach, California. QX Acquisition has its principal place of business in California. Aarsvold is now a resident of Minnesota but is operating at least two businesses out of California. Underwriters are residents of the United Kingdom. The policy was purchased through a broker in California. And the policy contains a California choice of law provision.

Thus, even if the first factor were a close call, or even favors Washington, the remaining factors favor California as having the most significant relationship to this complaint. In making this determination, the trial court did not abuse its discretion in finding that California law would apply to the extra-contractual claims.

Finally, while Coronus disagrees with the trial court's consideration of the remaining Gulf Oil public interest factors, it fails to offer convincing argument. The trial court did not abuse its discretion in weighing the remaining public interest factors in favor of California.

No. 83078-3-I/15

Affirmed.

_Mann, J._

WE CONCUR:

_Coburn, J._